Good morning, Your Honors. Lila Morgan, Federal Defender, on behalf of Ms. Vasquez, the attorney in this case. Ms. Vasquez's conviction should be reversed because the District Court erred in finding that there was reasonable suspicion to stop the vehicle that she was driving. In this case, the parties are fairly in agreement on the facts that during the middle of the day at 11 o'clock in the morning on October 27th, the defendants witnessed a Ford Expedition travel from a residential neighborhood in San Diego, California to an AutoZone parking lot. At that point, another vehicle, a gold Chevy Avalanche, arrives. A Hispanic man gets out of that Avalanche and into the Expedition. A conversation occurs, presumably. Then he returns to the Avalanche, at which point two Hispanic women and one Hispanic man get into the Expedition, which travels back to the cul-de-sac. At that point, the two Hispanic women get out of the Expedition and are guided to Ms. Vasquez's vehicle, which then, after an hour and 15 minutes, at 12.15, north of the checkpoint on I-5, is pulled over. In between there, there was a stop with a jack-in-the-box. These facts don't give rise to reasonable suspicion of any particular criminal activity. There's no testimony from the agents. The government failed to lay the factual foundation for what made this a notorious alien smuggling area, if in fact it was. The district court discounted that, saying anything east of El Paso, north of L.A., was probably a notorious alien smuggling area. We knew nothing about the experience of these agents, about whether or not other apprehensions had taken place, whether these behaviors were consistent with what agents believed to be alien smuggling, anything like that. The government failed to put any of that in the record. On appeal, in their briefing, they make a big production out of the fact that nothing was purchased from the auto zone or the jack-in-the-box, allegedly. Again, those are facts that are just simply not in the record. If that is what added to the agents' reasonable suspicion calculus, then testimony and some evidence of those suspicious facts should have been brought forward in the district court. It wasn't. So this court can't infer now that nothing was purchased or it was somehow more nefarious, other than just maybe they decided not to eat at the jack-in-the-box, whether the conversation that occurred with the man in the black truck was giving directions. The absence of this factual record fails to give rise to reasonable suspicion, especially in light of many of this court's cases, looking at the totality of the circumstances. We don't have any furtive behavior on the part of Ms. Vasquez, nothing about her driving pattern, no allegations of driving in tandem, nothing that the agents say specific to her that gave them rise to believe that she was involved in any illegal activity. Absent the presence of these two Hispanic women that were placed in her car, which is not much different than carpooling or getting a ride or anything else. They were going north on I-5, which is the main freeway out of San Diego. And at the point that she was pulled over, it's past the I-5 merge. It's the only freeway north of San Diego. And that's all in the record. I think in this case the government just failed to present sufficient facts. Okay. You got more?  Okay, thanks. Good morning. Michelle Pettit from the Act of the United States. What the appellant in this case fails to do is look at the standard of totality of the circumstances. Because when you look at any individual event, any individual fact that all parties agreed to at the motion hearing, certainly you'd say there was no nefarious activity going on. But what the appellant fails to do is look at all those facts in a concerted effort. I don't see how that helps you in this instance. I just don't see taking the whole course of conduct without any of the kind of expert testimony that opposing counsel was talking about, using expert loosely for this purpose. I don't understand what the totality gets you except a hunch. Well, Your Honor, I think it is more than a hunch. Because you have agents, you have a Border Patrol agent who is surveilling a cul-de-sac, and he sees a car go to an auto zone parking lot. Now, the appellant says that there was no facts that anything was purchased or not purchased in the auto zone, but we do have facts exactly what happened in that parking lot. There were no facts presented that anyone agreed to that anyone went into that auto zone. Instead of that, the appellant says, So what? I mean, when I have a car that needs fixing, my husband and I drive in tandem, leave it in the parking lot, and they know to come out and look at it later. And he gets in my car, and we drive off and stop somewhere. And, I mean, it just – I know that it isn't enough to say that the activity could be innocent, but I just don't see enough here that seems furtive or suspicious or unusual or something. Well, I agree with Your Honor if you stop me at the point of just going to the auto zone. And if I had a situation like you just described with your husband, then certainly there would be other facts that would show that would not be any kind of criminal activity. It would be absolutely innocent, and there would be no reason to suspicion. But what happened in the auto zone parking lot was another – when the other vehicle pulled up, the avalanche pulled up, the driver then of the avalanche gets into the back of the expedition, and there's a conversation. There's a few minutes where both drivers are in this expedition. Then the driver of the avalanche goes back to the avalanche, and then he receives or retrieves three individuals that he then guides over to the expedition. Now, this expedition doesn't just go up north to I-5. This expedition goes right back to the exact same cul-de-sac that it was initially observed, which is odd. That's not consistent with any type of carpooling activity. Maybe it's odd, but it's nothing more than that. But, Your Honor, it doesn't just stop there. See, the facts don't stop even at that cul-de-sac. These – now there was three individuals that were moved between the two vehicles, but now only two of them are transported to a third vehicle. And this third vehicle now – basically what you have is a whole bunch of people trading cars in a few places and then leaving. That's really what you have. And nobody is looking around. I mean, maybe they were, but the facts aren't in the record. You don't have anything of people trying to hide their faces or sneaking or anything. It's just people shifting cars, which seems kind of silly, but I just don't understand how that equates to reasonable suspicion of criminal activity. Doing it all in broad daylight. Yes, Your Honor. And we agree that there was no evasive maneuvers or any type of nervousness. The agents were close enough to determine nervousness or someone covering their face. But when they leave that cul-de-sac, they also go to that jack-in-the-box, which is very critical, because now instead of purchasing something at the jack-in-the-box, the driver of this van, the defendant, then talks to a third person. A different – a fourth vehicle involved. And then continues back up to I-5 and continues up north. And subsequent to this motion hearing, as you see in the record, there was a stipulated facts trial. And there were stipulated facts. And in that stipulated facts, the defendant agreed that this particular officer did have 13 years of experience as a border patrol agent. So under U.S. v. Wilson, this court absolutely can consider the training and experience of that officer based on that stipulated fact. Not without something to connect up why seemingly innocent activities are not innocent. Well, Your Honor, I think you also have to take into context beyond just the fact that we have the switching of the vehicles, the talking between individuals for transfer, the return of the cul-de-sac, the no purchases, the stop at the jack-in-the-box, you also have this all occurring in the Southern District of California near the border. So when you put it all in context, if you had this activity, let's say, in the middle of the country in Tennessee, I think that you would have a much harder position to make on reasonable suspicion. But you have a border patrol agent surveilling an area that is within the Southern District of California region by the border where these activities are common. Then you put it all together, you do have reasonable suspicion, which, again, the standard reasonable suspicion is not probable cause. It's not even preponderance of the evidence. It's much less. And we believe that based on the facts that we've presented, well, I should say that the facts that were stipulated. It's not as low as a lucky guess, though, which is what it looks like to me, just speaking for myself. And I agree with that. It has to be more than a lucky guess. It has to be more than a hunch. Were all the people Hispanic? Yes, Your Honor, they were. Everyone? Everyone, Your Honor. That added to it, too. Absolutely. That did add to it. Now, again, it's certainly our position that just because they were Hispanic, we didn't have reasonable suspicion. We need to be very careful about that. Exactly, Judge Fletcher. And that's where we are being very careful with that. But they were all Hispanic. And the transfer was, again, given the border region, given the dynamics there in the Southern District of California, that certainly was something that could be considered but would not be the factor that the agents would rely on solely. Additionally, it should be noted that at the motion hearing, what the request of the defendant was was for an evidentiary hearing. So all this discussion at the district court level was whether or not there was any disputed facts in which an evidentiary hearing should have been granted. So ultimately, if this court decides that the judge made an incorrect decision and those undisputed facts did not give rise to reasonable suspicion, then the real remedy here is to put the defendant back in the place that she would have been if the judge had given an evidentiary hearing, which means we would have had a hearing and that we would be able to then present evidence on the entire spectrum of what happened that day, why the agents were there surveilling, and their training and experience. So the only remedy that would really be available to this appellant would be to go back to that evidentiary hearing in order to hold that evidentiary hearing. Now, it is the United States position that when you do look at the totality of the circumstances in this case, that you look at the fact we do have a Border Patrol agent conducting surveillance and following this vehicle. You have the transfer of individuals between three different vehicles. You have them going to commercial establishments, but clearly not for any commercial purpose because there is no evidence that anyone went into any commercial establishment to purchase anything. We have three individuals transferred to two cars, and then only two of those individuals transferred to a third car. And then you have that third car making contact with a fourth individual, a fourth stop, to have a conversation, but again, not to make any commercial transaction. And then heading back up north, going right back on I-5 towards Los Angeles area. When you look at all that in totality, it is the United States position, it is more than a hunch. Because we do have a Border Patrol agent watching each and every piece of this transaction. And when you put the entire transaction together, ultimately, you do have something that, while it could be innocent, could also be criminal activity, given the locale of where this all occurred. And if this Court disagrees with the United States and believes that judgment of this made an incorrect decision and that there was not reasonable suspicion, then the real remedy here is to go back to the court case, back to the Court for that evidence to occur. Sotomayor, this is to let the government have a second bite of the apple? No, Your Honor. I think it just puts us back to where we would have been. I mean, it's just been his decision that day was whether or not an evidentiary hearing was needed. If he decided it wasn't, then he obviously didn't. He decided to make his decision. But if that decision was incorrect, then the evidentiary hearing would have been held, and then we would have presented the evidence. Did you ask for the evidentiary hearing? I did not, Your Honor, because I believe the evidence was not necessary. The additional evidence, the only disputed evidence, and it even stated on the record, the only disputed evidence is whether or not this particular area was an area of notorious alien smuggling activity. Certainly there was a lot more evidence the United States could have brought that felt that, given an ongoing investigation, it was not necessary and would not, that it was not needed to be able to find the reasonable suspicion. And I see that my time is almost up, and I'm making the assumption that the grand jury issue does not need to be discussed unless there's any questions. Okay. Would you address the procedural posture in the district court? What was pending there? Was it your request for an evidentiary hearing? Yes, it was, Your Honor. I requested an evidentiary hearing. We submitted a declaration pursuant to the local rule, with Ms. Vasquez declaring those facts that she had personal knowledge of as required, that she committed no traffic violations, that she was driving north on I-5, those facts. When we got to the motion hearing to determine whether we would get an evidentiary hearing, the government not just didn't ask for an evidentiary hearing, affirmatively said they didn't need one, that the facts were sufficient as they were, based on their proper, that not only should we not, we shouldn't get an evidentiary hearing, and the stop should be found to be reasonable. The district court asked us what particular facts we would put in issue, especially concerning the events of the auto zone, and whether we could dispute that the events of the auto zone happened. Of course, no one had personal knowledge of that event, other than the people at the auto zone. Was there a discussion with the court about a factual issue as to whether this was a notorious smuggling location? Yes, Your Honor. I raised, I specifically challenged that fact and said that we would dispute that the assertion that this was a notorious alien smuggling area, based on this court's holding and statement by Esteros, that absent some foundational record, it's a blanket assertion that can carry no weight. At that point, government counsel said, we don't even need it to be a notorious alien smuggling area anymore. Judge, you can take that fact out of the record, and we still have reasonable suspicion based just on these movements of people. So if the government had not waived it at that point, then we could send it back for the evidentiary hearing. But your position sounds like it was waived at that point. Yes. That was going to be actually my first point when I stood back up, was that, first of all, the government affirmatively said they didn't want a hearing and didn't need a hearing at the district court level. Nowhere in their briefing did they ask for a remand for an evidentiary hearing, and I think it's inappropriate. They shouldn't get a second bite of the apple, as Judge Fletcher pointed out. They have the burden to prove that this stock comported with the Fourth Amendment, and they had that burden initially at the district court level, and they didn't do it. They could have said, you know what, Your Honor, Judge Benitez, we believe that these facts are necessary. We do need that notorious alien smuggling to come up with reasonable suspicion for us to meet our burden, so we should have a hearing on that fact. But instead, they waived it, so we don't need that fact, because that's the one fact that Ms. Morgan is in a position to dispute, or Ms. Vasquez, excuse me, is in a position to dispute, and we don't want them to have a hearing. So I think remanding for a second bite, I think for the government to have a second bite of the apple is improper. I want to briefly address some of the other points that Ms. Pettit made, but I'm going to try to not repeat myself. Often she keeps pointing to the lack of purchases at either the jack-in-the-box or the auto zone. The record is absolutely silent as to that fact. They want to make an inference about it now, but they presented no testimony that nobody bought anything at the auto zone or nobody purchased anything at the jack-in-the-box. So this Court can't rely on that fact now in calculating reasonable suspicion because it's simply absent from the record. It's another fact that they want you to find suspicion on now that they didn't bother to prove up at the District Court. And as far as this being an area close to the border, this was in San Diego City proper. This isn't some of the other, many of the other cases that have come out of the jurisdiction out of Campo or somewhere where there's nothing. It's two or three miles from the border. This was well into the city of San Diego in a residential neighborhood in the middle of broad daylight. And while everyone involved was Hispanic, I think that actually, given the makeup of San Diego County and Southern California as a whole, just doesn't tell us anything. These were maybe odd behaviors, but they didn't give rise to reasonable suspicion. And unless there's other questions, I'm willing to submit. Thank you. Thank you. The matter is submitted, and now we come to the concluding matter.
judges: Fletcher B. , Pregerson, Graber